Joseph F. Falco, J.
Defendants move for an order to suppress statements and certain evidence which they contend were obtained in violation of their constitutional rights against self incrimination and by an unreasonable search and seizure.
At a hearing held on the 17th day of May, 1967, a female security guard employed by Sears Roebuck and Company testified substantially as follows.
She observed the defendants in the dress department of the store and she saw defendant Williams take three knit suits from a dress rack and take them to a fitting room in the dress department. In the meantime she saw defendant Willis go over to the jewelry department of said store which was nearby and saw her take a pair of earrings off the counter and put them in her coat pocket. Defendant Willis then returned to the dress department where she took an additional two knit suits off the rack (one beige and one tan) and took them into the fitting room. A few minutes elapsed and the two defendants came out of the fitting room. The defendant Williams was carrying the three knit suits that she had carried into the room and her purse and she placed them back on the rack. Defendant Willis did not carry the two suits out that she had brought into the fitting room, but did carry a purse. The security guard that testified had already alerted another security guard from the store and he kept the two defendants under constant surveillance while the first guard went into the fitting room to check for the beige and tan suits. She testified that there were no suits of any description in the fitting room. She further testified that the fitting room is made up of seven or eight individual stalls a little larger in size than a telephone booth. She also testified that you cannot see into the individual stalls and that she has no idea which stalls the defendants used. She then testified that she and the other security guard followed the defendants out of the front door of the store onto the street. She then approached the two defendants, advised them that she was a security guard from the store and that they were both under arrest. The defendants were then accompanied by both security officers to the security office in the basement of *1088 the store. The defendants were then asked to put the dresses on the desk in the security room and the security guard testified that the defendants were at first reluctant to do so but they did not resist and placed the dresses on the desk. She further testified that .she asked them to make out a reeordof-interview form in their own handwriting. Both of the defendants made out the form.
It is the contention of defendant Williams that her arrest was unlawful in that it was an arrest made by a private person, not a peace officer, therefore, the right to arrest must be found under section 183 of the Code of Criminal Procedure, which specifies that the crime must be committed or attempted in the presence of the private person. Defendant cites United States v. Viale (312 F. 2d 595) and People v. Moore (11 N Y 2d 271).
Defendant Williams contends further that the search of her purse and the taking of her statement were likewise unlawful and in violation of her constitutional rights against self incrimination and were the result of an unlawful arrest.
Section 183 of the Code of Criminal Procedure states:
‘ ‘ A private person may arrest another,
“ 1. For a crime, committed or attempted in his presence;
“ 2. When the person arrested has committed a felony, although not in his presence.”
Defendant Williams is charged with petit larceny (a misdemeanor) so the court can dismiss .subdivision 2 of section 183 of the Code of Criminal Procedure and turn its attention to subdivision 1. The Viale case (supra, p. 600) defines “ presence ” thusly: “ only when the arrestor actually observed acts which were ‘ in themselves sufficiently indicative of a crime being in the course of commission’”. The security guard’s own testimony shows that she never actually saw defendant Williams commit a crime but by her reasoning and suspicion she deduced that this defendant did in fact commit the crime of petit larceny. In answer to a question proposed by the court at the hearing, the security guard answered: A. “ I went in
and checked the fitting room and Detective Powers kept his eye on the girls. I came out and said to Detective Powers, I told l-ii.m the suits were not in the fitting room and that they must have them. That is the only conclusion I could come to ’ ’. Mere suspicion and surmise are not enough for a private person to make an arrest under section 183 of the Code of Criminal Procedure. Consequently, this court holds that the arrest of defendant Williams was unlawful. The Moore case (supra) is a case in point.
*1089 The search and any statements conld still he held reasonable even though there was an unlawful arrest if defendant Williams consented to them. (Johnson v. United States, 333 U. S. 10.) Again we look at the hearing record and note the testimony of the security guard. In response to a question on cross-examination she testified as follows: A. “No, they did not resist. They were reluctant, but no resistance ”. This court thinks that it is axiomatic that when the arrestor herself testifies that an act is done reluctantly it can hardly be said to have been consented to. I think it was a submission to authority and consent if any was not given freely and intelligently. Consequently the search was unreasonable and any statements are likewise tainted products of an unlawful arrest. (See People v. Abramson, 40 Misc 2d 723; Wong Sun v. United States, 371 U. S. 471; Costello v. United States, 365 U. S. 265 and Amos v. United States, 255 U. S. 313.)
Defendant Williams ’ motion to suppress is granted in all respects and the court suggests that if the District Attorney has no other evidence against this defendant that he consent to a dismissal of the charges against her.
In defendant Willis’ case, we have a somewhat different set of circumstances. The security guard testified at the hearing that she saw defendant Willis put earrings in her pocket and leave the store without paying for them. She also testified that she saw defendant Willis take two suits from the clothes rack and take them into the fitting room and, unlike defendant Williams, she never brought them out of the fitting room. There is no question but that the security guard having seen a crime (petit larceny) committed in her presence, she had a right to arrest defendant AVillis (Code Crim. Pro., § 183).
Defendant Willis further contends that the use of any evidence secured from her from the time of arrest until the time of arraignment should be suppressed on the grounds that there was an unreasonable search and seizure and that she was never notified of her constitutional rights to remain silent or to counsel by the arrestor, citing Miranda v. Arizona (384 U. S. 436). The arrestor here was not a peace officer but a security guard employed by Sears Roebuck and Company for the very purpose of detecting shoplifters and making arrests; therefore, a crime having been committed in her presence, she had a right to make the arrest. ■
The courts have consistently held that constitutional provisions prohibiting unreasonable searches and seizures are intended to protect against acts by the government, its officials and agents and neither the Federal provisions nor those *1090 of the States have any application to the unauthorized acts of private individuals. (Burdeau v. McDowell, 256 U. S. 465; People v. Appelbaum, 277 App. Div. 43, affd. 301 N. Y. 738; People v. Santiago, 53 Misc 2d 264.) The Miranda decision (supra) discusses the relationship of the Fifth Amendment privilege to police interrogation. It is during this custodial interrogation that the privilege against self incrimination is jeopardized. This court has been unable to find any Federal or State decisions which extend this prohibition to non-law-enforcement officers. The cases hold that private persons after making an arrest are under no duty to warn the defendant prior to obtaining any statement from them. (People v. Frank, 52 Misc 2d 266.)
This court is bound by the decisions laid down by the higher courts but entertains some doubts as to what the result might be in a proper case of this kind in light of the recent decisions in this area by the Supreme Court of the United States. The cases involving unreasonable searches and seizures by private persons cite the Burdeau case (supra) which was decided in 1921. The question has not been considered by the Supreme Court since that time.
Section 185 of the Code of Criminal Procedure states that a private person who has arrested another for the commission of a crime, must without delay, take him before a Magistrate or deliver him to a peace officer. This was not done in the Willis case. A search was made and a statement was taken without advising the defendant of her constitutional rights. These acts would have been condemned by this court if the arrest were made by a peace officer, but because the arrestor was a private person the law condones them. In the landmark Miranda case (supra) the court said (p. 460): 11 the government seeking to punish an individual [should] produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth ”. In the other landmark case of Escobedo v. Illinois (378 U. S. 478, 490) the court said: ‘ ‘ if the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system ’ ’.
Private persons are to be commended for making arrests where crime is committed in their presence, but this court thinks it is a dangerous policy to allow them to play the role of policeman. Unless it is to protect the arrestor and deprive the prisoner of potential means of escape, or to avoid destruction of evidence by the prisoner, I believe a search by a private person is not necessary. Limitations on citizen’s arrests properly serve *1091 to compel reliance upon the police once the danger of immediate public harm from criminal activity has ceased. (65 Col. L. Rev. 507.)
Any searches or statements to be taken can be more effectively accomplished by the professional policeman trained to do these things. It seems ludicrous to say that a District Attorney in prosecuting a defendant cannot use evidence obtained by a policeman in derogation of a defendant’s constitutional rights, but can use this same evidence obtained by a private person in derogation of a defendant’s constitutional rights, which in turn is handed over to a policeman who then hands it over to a District Attorney. As Judges Brandeis and Holmes said in their dissent in the Burdeau v. McDowell case (256 U. S. 465, 477 sufra): “Respect for law will not be advanced by resort, in its enforcement, to means which shock the common man’s sense of decency and fair play
As this court stated previously, it must follow the law as it is and not as this court believes it should be, therefore, the motion to suppress evidence in the Willis case is reluctantly denied.